**AEGIS INVESTIGATIVE GROUP**

v.

**The METROPOLITAN GOVERN- MENT OF NASHVILLE AND DAVIDSON COUNTY.**

Court of Appeals of Tennessee, at Nashville.

February 14, 2002 Session.

April 26, 2002.

Permission to Appeal Denied by Supreme Court Oct. 7, 2002.

Dennis Stanford and Daniel W. Champney, Nashville, Tennessee, for the appellant, Metropolitan Government of Nashville and Davidson County, Tennessee.

Phillip L. Davidson, Nashville, Tennessee, for the appellee, Aegis Investigative Group.

## OPINION

VERNON NEAL, Sp. J., delivered the opinion of the court, in which WILLIAM B. CAIN and PATRICIA J. COTTRELL, JJ., joined.

This appeal involves the efforts of defendant, The Metropolitan Government of Nashville and Davidson County, to reverse a judgment in favor of Aegis Investigative Group (Aegis). Plaintiff, a private investigating firm, was hired to watch the wife of a Murfreesboro client for information in a divorce action by placing an electronic tracking device on her car. After the wife discovered the device, she came to the Metropolitan Nashville Police Department to have the device removed as part of a stalking investigation on September 5, 1997. Metro held the device as potential evidence in a stalking and illegal use investigation and notified the Murfreesboro Police Department of a possible violation of Tenn.Code Ann. § 39–13–606. No charges were placed against Aegis. Notwithstanding the conclusion of its investigation, Metro did not return the device to plaintiff for some five (5) months after suit was filed, resulting in a judgment for $20,000 for negligence under the provisions of the Tennessee Governmental Tort Liability Act for failure to return the tracking device. We hold that a finding of negligence on the part of the defendant is not supported in the record and reverse the judgment entered by the trial court and assess the costs of this appeal to the appellee.

Plaintiff, a private investigating group, filed this cause in the First Circuit Court for Davidson County on October 30, 1998, alleging that employees of the Metropolitan Nashville Davidson County Police Department removed an electronic tracking device from the vehicle of the wife of one of its clients. The plaintiff was doing business as a partnership, although it alleged in the complaint that it was a corporation. The complaint filed by Aegis sought recovery both for unlawful seizure of the tracking device in violation of Tenn.Code Ann. § 40–33–215 and on a negligence theory under the Tennessee Governmental Tort Liability Act, Tenn.Code Ann. § 29–20–101, et seq., seeking $700,000 in damages and recovery of the property. Plaintiff alleged that defendant took possession of

and held the property for possible criminal investigation and failed to return it.

At trial, plaintiff abandoned the unlawful seizure theory and relied solely for recovery based on negligence under the Governmental Tort Liability Act. After conducting a bench trial, the trial court found that the defendant had a duty to return the plaintiff's property once it was no longer subject to its criminal investigation and was liable to plaintiff for loss of use and/or lost rental value of the device, but that plaintiff was not entitled to recover for any loss of use or lost rental based upon defendant's retention of the device during the period of time between the time the device was seized as evidence and the filing of the lawsuit because the plaintiff had failed to mitigate damages and was negligent in failing to act on its own behalf in seeking to recover the device by either directly requesting the defendant to return the device or by filing a court action to recover the device. The court limited the defendant's liability to plaintiff for loss of use and of lost rental value of the device for a period of ninety (90) days after the lawsuit was filed because the court found the defendant was negligent in failing to contact plaintiff to return the device and/or failed to reasonably respond to plaintiff's demand for the return of the tracking device by virtue of a possessory lawsuit filed by the plaintiff and the defendant having no reasonable basis for retaining the tracking device and the defendant having received adequate demand for the immediate return of the property when the property was no longer subject to criminal investigation. The trial court further found that the plaintiff was not negligent in seeking to recover the device after the hold was released in November, 1999, because plaintiff's counsel had corresponded with the defense counsel in an attempt to recover the device after the suit was filed. Accordingly, the court found that plaintiff suffered damages in the amount of $20,000 for loss of use and loss of rental based upon the sole negligence of the defendant in failing to return the tracking device in a reasonable and prudent manner.

Aegis purchased the transmitter or tracking device for $2,290 on August 20, 1996. Christopher Scott Spradlin, an owner of Aegis, testified at trial that the tracking device could have been replaced for approximately $2,500. A partner of Aegis, John Christopher White, testified that the tracking device had been used in one investigative case prior to trial and that the plaintiff had received some $7,000 for fees and charges in that case. However, the invoices filed as exhibits in this case reveal that total fees and charges in the sum of $2770.40 were recovered as a result of an investigation conducted for one Jim Griffith in a domestic case, which type of use has since been made illegal by the Tennessee General Assembly. The $2770.40 represented fees generated for use of the tracking device over the period from August 20, 1996, date of purchase, to the date of seizure by the defendant on September 5, 1997. Plaintiff also testified that it had been compelled to reduce its hourly investigative rate by $10 as a result of not having use of the tracking device. The trial court relied on the loss of $10 per hour for investigative work together with testimony that John Gamble would have used the device in connection with an investigation related to his business. Mr. Gamble said that it would have cost him around $17,000 to use the tracker in his investigation. He said he would have been glad to have paid up to around $70,000 for using it. Gamble's purpose for wanting to use the device was for tracking a truck and loader that he felt an employee was using for his own benefit. If the tracker had been available for rent and if Mr. Gamble had rented it, there is obviously no reason-

able way of knowing how long it would have taken him to catch his suspected employee.

The defendant argues that Metro did not owe a duty to return plaintiff's property without first having received a demand from Aegis for return of the property. Aegis had placed the electronic transmitter (tracking device) on the automobile of the wife of its client prior to September 5, 1997. After having discovered the tracking device, the wife turned it over to the Metropolitan Nashville Police Department on September 5, 1997, in connection with a possible stalking charge and illegality of use of device charge. Inasmuch as plaintiff's client and his wife were residents of Rutherford County, the Metropolitan Nashville Police Department notified the Murfreesboro Police Department of the seizure and that the property was being held for criminal investigation. The Murfreesboro Police Department immediately notified John Christopher White, a partner at Aegis, that the Metropolitan Police Department had seized the transmitter.

Shortly after the transmitter was seized, the Rutherford County District Attorney General determined that there would be no prosecution and so informed the Metropolitan Police Department. Mr. White of Aegis learned immediately thereafter from a representative of the Murfreesboro Police Department that there would be no prosecution. An Act of the Tennessee General Assembly codified in Tenn.Code Ann. § 39–13–606, became effective September 1, 1997, and made it a Class C Misdemeanor to knowingly conceal or otherwise place an electronic tracking device in or on a motor vehicle without the consent of all owners of a vehicle for the purpose of monitoring or following an occupant or occupants of such vehicle except in certain cases not applicable to the facts of this case. In particular, the legislation made illegal the placing or concealing of such device on a motor vehicle in a domestic case without the consent of all owners of the vehicle.

After it had been determined that no prosecution would ensue in Rutherford County, the Murfreesboro Police Department sent a member of its department on three occasions to recover the transmitter from the Metropolitan Police Department although admittedly they had never agreed to recover it on plaintiff's behalf. The record indicates that plaintiff had never requested or authorized the Murfreesboro Police Department to recover possession of the instrument on its behalf. The Metropolitan Police Department refused to release the transmitter to the Murfreesboro Police Department stating that the tracker was being held in a possible criminal investigation. Major Mickey McCullough of the Murfreesboro Police Department advised Mr. White of Aegis that his department had been unable to retrieve the tracker and advised him to get a lawyer. It is uncontroverted that neither Aegis or its representatives requested return of the transmitter prior to the filing of suit in this case on October 30, 1998. Aegis finally recovered the property on April 7, 1999, which was subsequent to filing of the suit but prior to trial.

The Governmental Tort Liability Act as provided in Tenn.Code Ann. § 29–20–205 removes the immunity of governmental entities for injury caused by the negligent act or omission of employees except in certain factual situations therein enumerated which are not applicable in this case.

■ We hold that Metro was a bailee of the tracking device and as such was a bailee implied in law, which is commonly referred to as a constructive bailee.

■ A bailment is a delivery of personalty for a particular purpose or on mere

deposit, on a contract expressed or implied, that after the purpose has been fulfilled it shall be re-delivered to the person who delivered it or otherwise dealt with according to his direction or kept until he reclaims it. *Merritt v. Nationwide Warehouse Company,* 605 S.W.2d 250 (Tenn.Ct. App.1980), quoting *Breeden v. Elliott Brothers,* 173 Tenn. 382, 118 S.W.2d 219 (1938). A bailment relation with all the attendant legal incidents may arise not only from an express agreement but may be implied in fact or in law. 8 AmJur2d, *Bailments* § 50, p 956.

 Although bailments are generally founded on a contractual relation, the agreement of the parties may be quasi and constructive and an actual contract or one implied in fact is not always necessary to create a bailment. There is also a class of bailments which arise by operation of law. Such a constructive or involuntary bailment arises where the person having possession of a chattel holds it under such circumstances that the law imposes on him the obligation of delivering it to another, where a person has lawfully acquired possession of personal property of another otherwise than by a mutual contract of bailment, or where a person has lawfully acquired the possession of personal property of another and holds it under circumstances whereby he should, on principals of justice, keep it safely and restore it or deliver it to the owner. In the case of a constructive bailment it is not necessary that there be either an actual or a constructive delivery. *Merritt v. Nationwide Warehouse Company, supra.* The lawful possession of the chattel and the duty to account for it as the property of another is sufficient. Constructive bailment is held distinct from constructive delivery. 8 C.J.S., *Bailments* § 15, p. 362.

Plaintiff did not contend in its pleadings or at trial that Metro came into possession of the tracking device by illegal means. In fact, plaintiff alleged in its complaint that Metro may have had probable cause to take possession of the property in the first instance. We hold that the Metropolitan Police Department came into legal possession of the tracking device on September 5, 1997.

Where the bailment is for an indefinite time, there can be no damages for the wrongful detention until after demand. Tennessee Jurisprudence, *Bailments* § 13, p. 352, citing *Fleming v. Patterson,* 2 Tenn. Cas. (Shann.), 88 (1876). Demand for return of the property is ordinarily a condition precedent to bringing suit in such cases. See 8 C.J.S., *Bailments* § 45, p. 496. The constructive holding of the tracking device by Metro as bailee was for an indefinite or an undetermined period of time inasmuch as there was no way of knowing how long the property would need to be held by Metro from and after taking possession on September 5, 1997.

 The judgment rendered on behalf of plaintiff in the trial court was predicated on the negligence of the defendant. To prevail on a negligence claim, a plaintiff must establish the following elements: "(1) a duty of care owed by defendant to plaintiff; (2) conduct below applicable standard of care that amounts to breach of that duty; (3) an injury or loss; (4) cause in fact; and (5) proximate, or legal cause." *Messer Griesheim Indus. v. Cryotech of Kingsport, Inc.,* 45 S.W.3d 588 (Ct.App. 2001); *McCall v. Wilder,* 913 S.W.2d 150 (Tenn.1995).

In facts somewhat analogous to those here under consideration, the Tennessee Supreme Court has indicated that demand of possession and a refusal as evidence of a conversion are required in cases where the possession was rightfully acquired. See *Merchants' National Bank of Memphis v.*

*Trenholm & Son,* 59 Tenn. (12 Heisk.) 520, wherein the court said:

> The authorities, we think, will show that a demand of possession, and a refusal, as evidence of a conversion, are required only in those cases where the possession was rightfully acquired; and not where the act of taking possession was itself a conversion.

In the case before us, possession was rightfully acquired by defendant and no duty of care existed in the absence of a demand made for return of the property by the plaintiff and refusal by the defendant. That was not done and the result is that plaintiff had no cause of action against the defendant for which suit could be brought in the first instance. Since demand is a prerequisite to bringing suit, demand made contemporaneous with or subsequent to filing of suit is not sufficient to create liability.

The trial judge correctly held that notice and demand were a prerequisite to a recovery of damages in that he did not allow plaintiff any recovery for damages which were alleged to have occurred prior to the commencement of this action. We hold that any demand made after commencement of suit came too late and that plaintiff's recovery of damages based on negligence of the defendant is not supported by the applicable law and the evidence. Therefore, we reverse the judgment of the trial court awarding damages to Aegis. Costs of this appeal are assessed against the appellee, Aegis Investigative Group.